IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| THERESA JOSEPH and LEAH JOSEPH, | ) ) ) | CV 11-109-M-DWM-JCL |
| Plaintiff; | ) ) | |
| v. | ) ) | ORDER |
| WALTER WILMERDING, in his fiduciary capacity and in his individual capacity, | ) ) ) ) | |
| Defendants. | ) ) ) | |

The Josephs claim that Walter Wilmerding wrongfully failed to purchase homeowner's insurance for the home that they lived in and failed to timely make repairs after a fire damaged the home. The home belongs to a trust, and Wilmerding is the trustee. Neither of the Josephs, though, are beneficiaries of that trust.

Judge Lynch recommends granting summary judgment in favor of Wilmerding on all claims except the Josephs' negligence and punitive damages claims. I agree with Judge Lynch for the most part. After Judge Lynch issued his Findings and Recommendation the Court invited Wilmerding to move for summary judgment on the negligence claim. Wilmerding had not moved for

summary judgment on that claim before Judge Lynch. On my review of Judge Lynch's findings and recommendation I could not fathom an issue of fact regarding Defendant's duty, or for that matter causation. Now, having heard the parties on that motion, it is my determination that Wilmerding is entitled to summary judgment on all claims. While the Plaintiffs have responded to my request as to their preference regarding certification to the Montana Supreme Court, on reflection it is my belief the more appropriate course is to grant summary judgment.

## BACKGROUND

In June 2011, a fire damaged the trust's house, which the Josephs were living in at the time. The Josephs sued Wilmerding, the trustee overseeing the house. The Josephs claim that Wilmerding wrongfully failed to purchase homeowner's insurance and did not timely repair the house after the fire.

Judge Lynch recounted in detail the facts of this case in his Findings and Recommendations. His account of the facts is adopted and restated here only when necessary to explain my decision.

Joseph's complaint asserts 6 counts: negligence (Count I), breach of contract (Count II), breach of the implied covenant of good faith and fair dealing (Count III), negligent infliction of emotional distress (Count IV), intentional

infliction of emotional distress (Count V), and punitive damages[1] (Count VI).

Wilmerding moved for summary judgment on all counts except Count I, the negligence claim. Judge Lynch recommends granting summary judgment as to Counts II through V but denying summary judgment as to Count VI. (*See* doc. 38.) Judge Lynch recommended not granting summary judgment as to Count VI, the punitive damages claim, largely because Wilmerding did not move for summary judgment on the negligence claim.

A review of Judge Lynch's Findings and Recommendation, strongly suggested that the Josephs' negligence claim would fail because Wilmerding did not owe a duty to the Josephs. By notice, Wilmerding was invited to move for summary judgment on the absence of duty. A hearing on the motion took place on July 3, 2012. The motion for summary judgment is granted and, as a corollary, summary judgment is also granted as to Count VI, the punitive damages claim.

## I. Judge Lynch's Findings and Recommendation

Since the Josephs did not object to Judge Lynch's Findings and

---

[1] Count VI alleges "malicious acts or omissions." The Josephs have a separate punitive damages claim, but they treat the claims for malicious acts or omissions and punitive damages as one and of the same. Indeed, under Montana law, the Josephs can prevail on their punitive damages claim only by showing clear and convincing evidence that Wilmerding was "guilty of actual fraud or actual malice." Mont. Code Ann. § 27–1–221(1), (5).

3

Recommendations, his work is reviewd for clear error. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). There is no clear error in Judge Lynch's recommendation as to Counts II through V so they are adopted in full.

### A. Breach of contract (Count II)

Judge Lynch concluded that the Josephs' breach of contract claim fails. Even assuming that the Josephs had an implied contract with Wilmerding, Wilmerding did not breach that contract. Any implied contract that might have existed did not require Wilmerding to purchase homeowner's insurance. Nor was he required to repair the house after the fire.

The Josephs are not entitled to relief under the equitable theory of promissory estoppel. They did not make this claim in their complaint, and the deadline for amending pleadings has passed. *See* Fed. R. Civ. P. 16(b). The Josephs have not explained why they were unable to make this claim before the deadline passed. Consequently, they do not have good cause to make this new claim after the deadline. *Id.*

### B. Breach of the implied covenant of good faith and fair dealing (Count III)

This claim fails because, as Judge Lynch observed, it is identical to the

Josephs' breach of contract claim. The two claims are based on the same allegation that Wilmerding failed to purchase homeowner's insurance and willfully failed to repair the house after the fire.

### C. Negligent and intentional infliction of emotional distress (Counts IV and V)

The Josephs were never treated for any emotional distress. And they have failed to show that the alleged emotional distress "was the reasonably foreseeable consequence" of any negligent or intentional act or omission on Wilmerding's part. *Sacco v. High Country Indep. Press, Inc.*, 896 P.2d 411 (Mont. 1995). Their emotional distress claims also fail.

## II. Joseph's negligence and punitive damages claim

Judge Lynch did not address the negligence claim because Wilmerding did not move for summary judgment on that claim. However, I invited Wilmerding to file a motion for summary judgment on the issue of whether he owed a duty to the Josephs. Wilmerding filed the motion, and I find it is well taken.

The Josephs' negligence claim presents two legal issues: (1) Did Wilmerding have a duty to purchase homeowner's insurance for the Josephs' benefit? and (2) Did Wilmerding have a duty to expeditiously make repairs to the house after the fire?

As a threshold matter, the Josephs do not argue that Wilmerding owed them a fiduciary duty by virtue of his trustee status. That duty is owed to the trust beneficiaries, not non-beneficiaries. *See e.g.* Mont. Code Ann. § 72–34–103; *Hofer v. Mont. Dept. of Public Health & Human Servs.*, 124 P.3d 1098, 1103 (Mont. 2005) (observing that a "trustee" is "one who, having legal title to property, holds it in trust for the benefit of another and owes a fiduciary duty to that beneficiary" (citing *Black's Law Dictionary* 1519 (Bryan A. Garner ed., 7th ed., West 1999))). Rather than a fiduciary duty, the Josephs assert their negligence claim based on the common-law duty of care. *See Fisher v. Swift Transp. Co., Inc.*, 181 P.3d 601, 606–09 (Mont. 2008).

Whether a duty is owed is a question of law that the Court decides. *Id.* at 607 (citations omitted). Under Montana law, courts consider two factors when determining whether a duty exists: (1) "whether the imposition of [a] duty comports with public policy" and (2) "whether the defendant could have reasonably foreseen that his or her conduct could have resulted in an injury to the plaintiff." *Id.* (citations omitted).

### A. Public policy

When weighing the policy considerations for imposing a duty, Montana courts are supposed to consider five factors:

1. the moral blame attached to a defendant's conduct,

2. the prevention of future harm,

3. the extent of the burden placed on the defendant,

4. the consequences to the public of imposing such a duty, and

5. the availability and cost of insurance for the risk involved.

*Id.* at 608 (citations and quotation marks omitted).

Here, as to the first question—the duty to purchase homeowner's insurance—the policy considerations weigh against imposing a duty. Wilmerding gratuitously allowed the Josephs to live at the house rent free, and they essentially took the house "as is." Admittedly, under Montana law, every property owner has a duty to exercise "ordinary care or skill in the management of the person's property . . . ." Mont. Code Ann. § 27–1–701. But there is a difference between making your property safe for others and insuring your property in case it is not. Insuring property does not prevent harm that might be caused by the property's condition (e.g., insurance does not prevent house fires). Instead, property insurance simply indemnifies the owner for that harm. In other words, property insurance protects against harms to the property owner, not harms to a third-party.

This is not to say that third parties never benefit from property insurance. They often do. A plaintiff in a premises liability case generally hopes that the

property owner has property insurance so that there is money from which to recover damages. Suppose, for example, the property owner negligently creates some obviously dangerous condition, or fails to correct one.  The injured plaintiff might sue and recover against the property owner. If the property owner has insurance and the injured person prevails in the lawsuit, that insurance provides a source of money from which the injured party may recover his damages. The cause of action, though, lies in the dangerous condition, not the availability or procurement of insurance.

A property owner, then, has no "moral blame" for failing to purchase property insurance which, by design, protects the owner and not third parties. *See Fisher*, 181 P.3d at 608 (citations and quotation marks omitted). Unlike unsafe property, a failure to purchase insurance does not pose a risk to third parties. The failure to purchase insurance simply means that third parties cannot look to insurance as a source from which to recover damages; they must look elsewhere (e.g., the property owner's personal money or property).

In that same vein, the failure to purchase insurance does not "prevent . . . future harm" caused by the property's condition. *See Fisher*, 181 P.3d at 608 (citations and quotation marks omitted). It simply protects the property owner (not third parties) in case there is future harm.

8

Finally, a duty to purchase property insurance would place an expensive burden on property owners.[2] Here, Wilmerding might very well have been less likely to gratuitously allow the Josephs to live at the house if he had been required to insure it. The trust owned the house, there was no secured interest held by a bank or other lending institution. While the trust beneficiaries may have claims based on trust law, the gratuitous occupants do not.

The policy considerations also weigh against concluding that Wilmerding had a duty to more expeditiously make repairs to the home after the fire. Again, the Josephs essentially lived in the home rent free and "as is." The parties have not argued that they had a rental agreement, which might trigger the statutory duty of a landlord to maintain and make repairs to the house. Mont. Code Ann. § 70–24–303(1)(c). Even without the repairs (which were eventually made), the house was apparently habitable.

Since there was no rental agreement between the parties, Wilmerding arguably could have ordered the Josephs to leave the house at any time (setting aside any promissory estoppel or similar arguments). Given this threat, the policy

---

[2] By way of comparison, the Court is mindful of Montana's statutory duty to purchase vehicle insurance. But that duty is a statutory duty, not a common law duty like the duty at issue here. Even so, a suit claiming the failure to buy automobile insurance caused damage in a car wreck would also be futile.

considerations weigh against imposing a duty on Wilmerding to more expeditiously make repairs. If that duty existed, Wilmerding could have simply forced the Josephs to leave an otherwise habitable house with nowhere to go instead of choosing to make the repairs sooner. Few would dispute that greater "moral blame" would attach to that action when compared to letting the Josephs remain in the house and later making the repairs. *Fisher*, 181 P.3d at 608 (citations and quotation marks omitted).

My reasoning is not intended to minimize the difficulties that the Josephs might have faced as a result of the fire, but their lawsuit against Wilmerding is analogous to suing someone for giving a bad gift. Assuming that a person receiving a gift is not harmed by the gift itself, there is no legal remedy for receiving a bad gift. The only remedy is to not accept it. *See West v. Tan*, 322 F.2d 924, 926 (9th Cir. 1963) (applying Hawaii law and observing that a gratuitous occupant "receives the use of the premises as a gift, and comes under the old saying that you may not look a gift horse in the mouth. He has no right to demand that the land be made safe for his reception, and he must, in general, assume the risk of the condition he may encounter, and look out for himself."); *see also Mathison v. Bumbo*, 2008 WL 8797937 at *5 (C.D. Cal. Aug. 18, 2008) ("[A] person who pays nothing for a good has no cause to complain that the good is

worth little or nothing.")

### B. Foreseeability

When determining whether a duty exists, Montana case law requires consideration of "whether the defendant could have reasonably foreseen that his or her conduct could have resulted in an injury to the plaintiff." *Id.* (citations omitted). "A plaintiff is a foreseeable plaintiff if she or he is within the 'foreseeable zone of risk' created by the defendant's negligent act." *Id.* (citations omitted).

The failure to purchase homeowner's insurance creates a risk for the homeowner, not a third party who has no contractual interest in the home. Even when there is a contractual relationship between the homeowner and occupant, such as a landlord-tenant relationship, the landlord does not have a common law duty to insure the rental property for the benefit of the tenant. That obligation is contractually negotiated through the landlord-tenant agreement. *See e.g. Am. Family Mut. Ins. Co. v. Auto-Owners Ins. Co.*, 757 N.W.2d 584, 593–94 (S.D. 2008) (collecting cases). Here, the Josephs were not in the "zone of risk" because Wilmerding's failure to purchase homeowner's insurance was not their risk to bear. It was Wilmerding's risk as the trustee.

Wilmerding's failure to timely make repairs to the home arguably creates

11

some risk to the Josephs, but that risk is outweighed by the greater risk that Wilmerding could have forced the Josephs to leave an otherwise habitable home instead of choosing to make the repairs sooner.

Moreover, the Josephs were not foreseeable plaintiffs because they lived at the house "as is." Wilmerding had no obligation to let them continue living at the house. If he had no obligation to let them continue living at the house, then he had no obligation to expeditiously make repairs for their benefit. Absent that obligation, the Josephs have no claim against Wilmerding.

## CONCLUSION

For the reasons above, Wilmerding did not owe the Josephs a duty to purchase homeowner's insurance or to more expeditiously make repairs to the home. Summary judgment is entered in favor of the defendants. Since the Josephs do not have any viable claims for actual damages, they also have no claims for punitive damages. *See Hovland v. Gardella*, 2008 WL 5395738 at *14 (D. Mont. 2008).

IT IS ORDERED that Judge Lynch's Findings and Recommendations (doc. 38) are adopted in full as to Counts II through V of the Josephs' complaint.

IT IS FURTHER ORDERED that Walter Wilmerding's motions for summary judgment (docs. 17, 55) are GRANTED. The Court grants summary

judgment in favor of Wilmerding on all counts. The Clerk of Court is direct to enter judgment in favor of Wilmerding and close this case.

IT IS FURTHER ORDERED that the jury trial scheduled for July 16, 2012, is VACATED.

IT IS FURTHER ORDERED that any request or notice for certification to the Montana Supreme Court is DENIED.

Dated this 9th day of July 2012.

DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT